**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JUL 14 2020

JAMES W. McCORMACK, CLERK
By: DEP CLERK

| | | |
|---|---|---|
| JEK SERVICES INC.<br>915 West B Street<br>Russellville, Arkansas 72801 | : | |
| and | : | Case No. 4:20-cv-836-KGB |
| JAMES E. KUSTURIN, JR.<br>7601 Westminster Place<br>Fort Smith, Arkansas 72903 | : | |
| Plaintiffs, | : | JUDGE |
| v. | : | This case assigned to District Judge Baker<br>and to Magistrate Judge Ray |
| Simmons Bank<br>501 Main Street<br>Pine Bluff, Arkansas 71611 | : | **JURY DEMAND ENDORSED HEREON** |
| and | : | |
| Centennial Bank<br>620 Chestnut Street<br>Conway, Arkansas 72032 | : | |
| and | : | |
| Bank OZK<br>17901 Chenal Parkway<br>Little Rock, Arkansas 72223 | : | |
| and | : | |
| Arvest Bank<br>75 North East Street<br>Fayetteville, Arkansas 72701 | : | |
| and | : | |
| First State Bank<br>3103 East Main Street<br>Russellville, Arkansas 72802 | : | |

and

First Western Bank
80 West Main Street
Booneville, Arkansas 72927

and

First Security Bank
314 North Spring Street
Searcy, Arkansas 72143

and

ABC Banks 1-100,

Defendants.

## CLASS ACTION COMPLAINT

Now come Plaintiffs, James E. Kusturin, Jr. and JEK Services Inc. (collectively "Plaintiffs"), in their individual and representative capacity, and for their Complaint against Defendants (collectively "Defendants") hereby state the following:

## INTRODUCTION & BACKGROUND TO THE PAYROLL PROTECTION PROGRAM

1. On March 25, 2020, in response to the outbreak of the coronavirus ("COVID-19"), the federal government enacted emergency legislation to enable small businesses to continue employing and paying their employees by creating the Payroll Protection Program ("PPP"), which provides federally guaranteed loans to make payroll expenses for two months. The PPP is contained within sections 1102 and 1106 of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"). To fund the PPP, Congress approved an initial $349 billion for the program.

2. On April 24, 2020, the federal government added an additional $310 billion to the PPP through the Paycheck Protection Program and Health Care Enhancement Act.

3. The PPP is a temporary program under the Small Business Administration's ("SBA") 7(a) Loan Program. The PPP permits the SBA to guarantee 100 percent of 7(a) loans and provides forgiveness of up to the full principal amount of any qualifying loan. Small business owners apply for a PPP loan through existing SBA-approved Lenders ("Lenders") or through any federally insured deposit institution. The PPP also delegates authority to Lenders to provide relief expeditiously.

4. The CARES Act provides that the Administrator of the SBA "shall reimburse a lender" for processing the loans. 15 U.S.C. § 636(a)(36)(P)(i). This reimbursement shall be made not later than five days after the disbursement of the PPP loan. *Id.* at § 636(a)(36)(P)(iii).

5. Lenders are to be reimbursed the following amounts per loan: Five percent (5%) for loans of not more than $350,000; three percent (3%) for loans of more than $350,000 and less than $2 million; and one percent (1%) for loans of at least $2 million. *Id.* at § 636(a)(36)(P)(i).

6. The CARES Act also authorizes the payment of a fee to "agents" who assist eligible recipients in preparing their PPP loan application in an amount that is not in excess of the limits established by the Administrator. *Id.* at § 636(a)(36)(P)(ii).

7. On April 15, 2020, the Administrator issued the Interim Final Rule (the "Rule") regarding the PPP loans. Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. 20,811 (Apr. 15, 2020) (to be codified at 13 C.F.R. pt. 120). The Rule provides that agent fees "*will be paid by the Lender* out of the fees the Lender receives from SBA." *Id.* at 20,816 (emphasis added). The Rule also specifically provides that agents "may not collect fees from the borrower or be paid out of the PPP loan proceeds." *Id.* Thus, per the combined effect of the CARES Act and the Rule, agents who assist applicants in preparing their

PPP loan can only be paid, and must be paid, a fee by the Lender out of the fees that the Lender itself receives for processing the PPP loans.

8. Under the Rule, the total amount that an agent shall receive from the Lender "for assistance in preparing an application for a PPP loan" is as follows: Up to one percent (1%) for loans of not more than $350,000; a half of a percent (.5%) for loans of more than $350,000 and less than $2 million; and a quarter of a percent (.25%) for loans of at least $2 million. *Id.*

9. Despite these clear instructions that Lenders are to pay the agent fees—and despite requests by the agents to the Lenders to be paid their fees—Defendant Lenders have unlawfully withheld those fees from the agents and have instead kept the funds intended for the agents for themselves.

10. Defendant Lenders have no legal authority under the CARES Act to deny the agents' fees due and owing to them by the CARES Act and the Rule.

11. Plaintiffs bring this action, on behalf of themselves and all others similarly situated, against Defendant Lenders for violations of the CARES Act, the SBA's 7(A) loan program, 15 U.S.C. § 636(a), and 13 C.F.R. part 120, and for unjust enrichment and conversion under Arkansas law.

**JURISDICTION**

12. This Court has jurisdiction over Plaintiffs' claims under 28 U.S.C. § 1331 because this action arises under the laws of the United States.

13. This Court has supplemental jurisdiction under 28 U.S. § 1367(a) over the state-law claims, as all claims relate to the same case and controversy.

14. This Court has personal jurisdiction over Defendants because Defendants do business in this District and a substantial number of the events giving rise to the claims took place in Arkansas.

15. A substantial part of the events or acts giving rise to the claims herein occurred within this District; and therefore, venue is appropriate in this District pursuant to 28 U.S.C. § 1391(b)(2).

**PARTIES**

16. Plaintiff James E. Kusturin, Jr. ("Kusturin") is a registered tax return preparer who resides at 7601 Westminster Place, Fort Smith, Arkansas.

17. Plaintiff JEK Services Inc. is an active corporation incorporated in the State of Arkansas and authorized to conduct business in Arkansas.

18. Defendant Simmons Bank is a state-chartered bank with its main office in Pine Bluff, Arkansas

19. Defendant Centennial Bank is a state-chartered bank with its main office in Conway, Arkansas.

20. Defendant Bank OZK is a state-chartered bank with its main office in Little Rock, Arkansas.

21. Defendant Arvest Bank is a state-chartered bank with its main office in Fayetteville, Arkansas.

22. Defendant First State Bank ("First State") is a state-chartered bank with its main office in Russellville, Arkansas.

23. Defendant First Western Bank ("First Western") is a state-chartered bank with its main office in Booneville, Arkansas.

24.     Defendant First Security Bank ("First Security") is a state-chartered bank with its main office in Searcy, Arkansas.

25.     Upon information and belief, Defendants ABC Banks 1-100 are banks and other financial institutions that participated as Lenders in the PPP and refused to pay agents the required agent fee; the names and addresses of which are unknown at this time and could not be reasonably ascertained and/or discovered prior to the filing of this complaint.

## FACTS

26.     Plaintiff Kusturin owns JEK Services Inc., an accounting firm with its principal place of business in Russellville, Arkansas. All actions taken by Kusturin referenced in this Complaint were made within the course and scope of his employment with JEK Servies, Inc. (collectively they will be referred to as "Plaintiffs").

27.     Between March 2020 and May 2020, Plaintiffs prepared and submitted PPP loan applications on behalf of small businesses.

28.     Of the loans Plaintiffs prepared, the Lenders and SBA approved fifty-one (51) loans, which ranged from $4,400 to $83,570.  The small businesses received their loan proceeds between April 2020 and June 2020.

29.     Plaintiffs submitted requests for agent fees to all of the Defendant Lenders.

30.     Plaintiffs have not received the agent fees from any of the Defendant Lenders.

31.     In order to prepare and submit the loan applications, Plaintiffs spent numerous hours reviewing the CARES Act and PPP loan provisions and preparing and submitting applications.

32. As part of the application process, Plaintiffs assisted each of the applicants in gathering and analyzing documents, making the necessary calculations, and preparing and submitting the applications.

33. During the time that Plaintiffs were preparing and submitting PPP applications, they did not and could not pursue other non-PPP business for which they could have billed those clients.

34. Under 13 C.F.R. 103.1(a), an agent "means an authorized representative including an attorney, accountant, consultant, packager, Lender service provider, or any other individual or entity representing an Applicant or Participant by conducting business with SBA." Conducting Business with the SBA includes preparing and submitting an application for financial assistance of any kind on behalf of an applicant. *Id.* at 103.1(b).

35. Under the Code, a "packager" is a person "who prepares the Applicant's application for financial assistance and is employed and compensated by the Applicant." *Id.* at 103.1(A)(2).

36. Based on these Code provisions, the U.S. Department of the Treasury provided guidance to Lenders through its "Paycheck Protection Program (PPP) Information Sheet—Lenders," ("Information Sheet"), a copy of which is attached as Exhibit A.[1] With regard to agents, the Treasury Department's Information Sheet stated the following: "An agent is an authorized representative and can be:

- An attorney;
- An accountant;
- A consultant;

[1] The Information Sheet is available at https://home.treasury.gov/system/files/136/PPP%20Lender%20Information%20Fact%20Sheet.pdf.

- Someone who prepares and applicant's application for financial assistance and is employed and compensated by the applicant;
- Someone who assists a lender with originating, disbursing, servicing, liquidating, or litigating SBA loans;
- A loan broker; or
- Any other individual or entity representing an applicant by conducting business with the SBA."

37. The Treasury Department's Information Sheet also stated that "Agent fees *will be paid* out of Lender fees. The Lender *will pay* the agent." *See* Ex. A. (emphasis added).

38. Pursuant to 13 C.F.R. 103.1 and the Treasury Department's guidance, Plaintiff Kusturin is an agent for the small businesses applicants when he prepared and submitted the small businesses' PPP loan applications.

39. Despite the requirements in the Rule and the Treasury Department's guidance that the Lender must pay the agent fees out of the fees that the Lender receives from the SBA, Defendants have failed and/or refused and continue to refuse to pay Plaintiffs theirauthorized agent fees. Furthermore, based on information and belief, Defendants have refused and continue to refuse to pay any agents the authorized agent fees.

40. Nothing in the CARES Act, 13 C.F.R. part 120, or the Rule allows the Lenders to withhold agent fees from agents, and instead, simply keep the fees to enrich themselves. To the contrary, Defendants are required under the CARES Act and the Rule to pay agents as specified in the Act and Rule.

41. The purpose and motivation behind Defendants' practices are readily apparent. By refusing to pay agent fees to the actual agents, Defendants kept tens of millions of dollars for themselves, to which they are not entitled, and thus, deprived Plaintiffs of their property.

42. Defendants' actions violate the Rule, which provides that agent fees "*will be paid by the Lender*." Indeed, the SBA has specifically provided that an agent "may not collect fees

from the borrower or be paid out of the PPP loan proceeds." Thus, if Defendant Lenders are permitted to withhold the amount due to agents, including Plaintiffs, then the agents cannot and will not be compensated for the hours spent assisting small businesses. Such a result would be inconsistent with the very purpose of the CARES Act, which specifically provided that agents will obtain fees for assisting small businesses in applying for PPP loans.

43.     Nationally, as of July 10, 2020, the SBA had approved 4,907,655 PPP loans for a total disbursement of $517,417,286,175. Of this amount, $226,474,015,480 was for loans under $350,000; $186,389,866,874 was for loans between $350,000 and $2 million; and, $104,553,403,819 was for loans above $2 million.[2]

44.     The potential withheld agent fees for all loans under $350,000 is $2,264,740,154.80. The potential withheld agent fees for all loans between $350,000 and $2 million is $931,949,334.37. And the potential withheld agent fees for all loans over $2 million is $261,383,509.55.

45.     Thus, upon information and belief, on a nationwide basis, Lenders, including Defendant Lenders, may have withheld upwards of over **$3.4 billion** from authorized agents, many of whom are *themselves* part of small businesses, and who remain uncompensated for the time they spent helping other small businesses apply for PPP loans.

46.     As of July 10, 2020, the SBA has approved 42,524 PPP loans in Arkansas, for a total disbursement of $3,306,785,127. *See* Ex. B.

47.     Based on the authorized percentages for agent fees, the potential withheld agent fees for Arkansas PPP loans is between $8.2 million and $33 million.

---

[2] These figures were obtained from the SBA's website. A copy of the document is attached as Exhibit   B,   and   is   available   at   https://www.sba.gov/sites/default/files/2020-04/PPP%20Deck%20copy.pdf.

48. As a result of Defendants' conduct, Plaintiffs have suffered financial harm, wrongfully lost the opportunity to collect compensation, and generally lost economic opportunities to conduct business.

49. Defendants and other Lenders should not be permitted to keep millions and perhaps billions of dollars for work that was performed by others who expected payment from the Lenders under the CARES Act as specified by the SBA.

**CLASS ACTION ALLEGATIONS**

50. Plaintiffs incorporate each and every allegation contained in the preceding paragraphs by reference as if fully set forth herein.

51. Plaintiffs, in accordance with Rule 23(b) of the Federal Rules of Civil Procedure, bring this action on behalf of themselves and as members of the Class defined below.

52. Plaintiffs seek to represent a nationwide Class comprised of all individuals and entities who

a. are an agent under 13 C.F.R. 103.1;

b. prepared and/or submitted approved loan applications on behalf of small businesses under the PPP between March 25, 2020, and June 30, 2020;

c. submitted a request for payment of the authorized agent fees to Defendant Lenders or were simply not paid at all for the fees due and owing to them under the CARES Act, 13 C.F.R. part 120, and/or the Interim Final Rule; and

d. have been denied their agent fee from Defendants.

53. To the extent that a nationwide Class is not certified and in the alternative, Plaintiffs seek to represent a statewide Class comprised of all individuals and entities in Arkansas who

      a.   are an agent under 13 C.F.R. 103.1;

      b.   prepared and/or submitted approved loan applications on behalf of small businesses under the PPP between March 25, 2020, and June 30, 2020;

      c.   submitted a request for payment of the authorized agent fees to Defendant Lenders or were simply not paid at all for the fees due and owing to them under the CARES Act, 13 C.F.R. part 120, and/or the Interim Final Rule; and

      d.   have been denied their agent fee from Defendants.

54.      The following are excluded from the Class and/or the Subclass: (a) any Judge or Magistrate presiding over this action and members of their families; (b) the officers, directors, or employees of Defendants; and (c) all persons who properly execute and file a timely request for exclusion from the Class.

55.      The Class and/or the Subclass is so numerous that joinder of all members is impracticable.

56.      There are questions of law and fact common to the Class and/or the Subclass. These common questions include, but are not limited to, whether Defendants wrongfully withheld agent fees from authorized representatives in violation of federal and state law.

57.      The claims of Plaintiffs, which arise out of Defendants' withholding of agent fees to authorized representatives of PPP loan applicants, are typical of the claims of the Class and/or Subclass members. Likewise, Defendants' defenses to Plaintiffs' claims would be typical of the defenses to the Class and/or the Subclass claims.

58.      Plaintiffs will fairly and adequately represent and protect the interest of the Class and/or Subclass. Plaintiffs are articulate and knowledgeable about their claims and fully able to describe them. There are no conflicts of interest between Plaintiffs with respect to the interests

of the Class and/or Subclass members.  Plaintiffs, like the Class and/or Subclass members, have suffered financial loss as a result of Defendants' acts.  Plaintiffs have sufficient financial resources to litigate this case and further the interests of the Class and/or the Subclass without compromising them.

59.     Counsel for Plaintiffs are well-suited to represent their interests and the interests of the Class and/or Subclass at large.  Counsel includes Robert M. Cearley, Jr. (Cearley Law Firm, P.A.) and James E. Arnold, Damion M. Clifford, Gerhardt A. Gosnell II, and Tiffany L. Carwile (Arnold & Clifford, LLP).   The combined experience and areas of professional concentration of these attorneys are well-suited to representation of the interests of the Class and/or Subclass.  All these lawyers practice complex civil litigation and are experienced in class action litigation.

60.     Class certification is appropriate pursuant to Rule 23(b)(1) of the Federal Rules of Civil Procedure.  Prosecuting separate actions would create a risk of adjudications with respect to individual Class and/or Subclass members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

61.     Class certification is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.  Defendants will continue to commit the alleged violations, and the members of the Class and/or Subclass will continue to be unfairly denied compensation to which they are entitled to under the PPP and the CARES Act.  Defendants have acted and refused to act on grounds that apply generally to the Class and/or Subclass so that final injunctive relief and corresponding declaratory relief is appropriate respecting the Class and/or the Subclass as a whole.

62. Class certification is appropriate under Rule 23(b)(3) of the Federal Rules of Civil Procedure. The questions of law or fact common to the members of the Class and/or Subclass, described above, predominate over any questions affecting only individual members.

63. This Court is an appropriate forum for the litigation of the Class and/or the Subclass claims.

**Count I**
**Violations of the CARES Act**
**(Against All Defendants)**

64. Plaintiffs incorporate each and every allegation contained in the preceding paragraphs by reference as if fully set forth herein.

65. The CARES Act provides a stimulus package in response to the COVID-19 pandemic and includes the PPP, which provides assistance to small businesses seeking to maintain payroll and other authorized expenses.

66. There is an implied cause of action arising under the CARES Act.

67. The CARES Act, along with the SBA's Rule on the PPP, provides for the payment of agent fees to authorized representatives who assisted PPP loan applicants with their loan applications.

68. In flagrant disregard for the law, Defendants have failed and/or refused to pay the agent fees to the Borrowers' authorized representatives, and instead, kept the fees to enrich themselves.

69. Plaintiffs, the Class, and/or the Subclass members are agents under the regulatory provisions for the PPP loan applicants and they are entitled to payment from the Lenders as set forth in the CARES Act and the Rule.

70. Nevertheless, Defendants refused to pay Plaintiffs, the Class, and/or the Subclass members the authorized agent fees.

71. As a direct and proximate result of Defendants' failure and/or refusal to comply with the CARES Act and the Rule, Plaintiffs, the Class, and/or the Subclass members have suffered damages in excess of $5 million.

**Count II**
**Violations of the SBA's 7(a) Loan Program, 15 U.S.C. § 636(a)**
**(Against All Defendants)**

72. Plaintiffs incorporate each and every allegation contained in the preceding paragraphs by reference as if fully set forth herein.

73. The PPP is part of the SBA's 7(a) loan program, which is designed to assist small businesses to obtain financing.

74. There is an implied cause of action arising under the SBA's 7(a) loan program as applied through the CARES Act.

75. The Rule on the PPP provides for the payment of agent fees to authorized representatives who assisted PPP loan applicants with their loan applications.

76. In flagrant disregard for the law, Defendants have failed and/or refused to pay agent fees to Plaintiffs, the Class, and/or the Subclass members, and instead, have kept the fees to enrich themselves.

77. As a direct and proximate result of Defendants' wrongful actions, Plaintiffs and the Class and/or the Subclass members have suffered damages in excess of $5 million.

**Count III**
**Conversion**
**(Against All Defendants)**

78. Plaintiffs incorporate each and every allegation contained in the preceding paragraphs by reference as if fully set forth herein.

79. Plaintiffs, the Class, and/or the Subclass members have an ownership and entitlement to possession of the agent fees due and owing to them under the CARES Act, 13 C.F.R. part 120, and/or the Rule.

80. Defendants have wrongfully and without authorization possessed and exercised dominion over Plaintiffs, the Class and/or the Subclass members' property, specifically their agent fees.

81. Defendants' continued exercise of control over Plaintiffs, the Class, and/or the Subclass members' agent fees is inconsistent with, and a denial of, their right of ownership to and entitlement to possess those same agent fees.

82. Plaintiffs, the Class, and/or the Subclass members have demanded that Defendants pay the agent fees due and owing to them under the CARES Act, 13 C.F.R. part 120, and/or the Rule.

83. Despite requests by Plaintiffs, the Class, and/or the Subclass members, Defendants have failed and/or refused to pay the agent fees and instead, have wrongfully kept the agent fees for their own personal gain.

84. Defendants' actions were intentional, willful, reckless, and were committed with actual malice.

85. As a direct and proximate result of Defendants' conduct, Plaintiffs, the Class, and/or the Subclass members have suffered damages in excess of $5 million.

**Count IV**
**Unjust Enrichment**
**(Against All Defendants)**

86. Plaintiffs incorporate each and every allegation contained in the preceding paragraphs by reference as if fully set forth herein.

87. Plaintiffs, the Class, and/or the Subclass members further state that Defendants have been unjustly enriched at Plaintiffs, the Class, and/or the Subclass members' expense, as Plaintiffs, the Class, and/or the Subclass members worked to prepare and/or submit PPP loan applications on behalf of small businesses, all in reliance upon the requirement that Defendants would remit to Plaintiffs, the Class, and/or the Subclass members the agent fees authorized by the CARES Act and the Rule.

88. Defendants were aware that Plaintiffs, the Class, and/or the Subclass members were conferring a benefit upon them by preparing PPP loan application for small businesses that participated in the small business loan program under the CARES Act.

89. Defendants received fees from the SBA. Defendants are not entitled to the portion of those fees that belong to Plaintiffs, the Class, and/or the Subclass pursuant to the CARES Act and the Rule. Defendants' continued retention of, and refusal to remit, the agent fees due and owing to Plaintiffs, the Class, and/or the Subclass members is unjust and unconscionable.

90. As a direct and proximate result of Defendants' actions, Plaintiffs, the Class, and/or the Subclass members have suffered damages in excess of $5 million.

**Prayer for Relief**

**Wherefore,** Plaintiffs, the Class, and/or the Subclass pray as follows:

A. Certify this action as a class action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, designate Plaintiffs as the Class, and/or the Subclass representative, and counsel for Plaintiffs as Class and/or the Subclass' Counsel;

B. Direct Defendants to make available to Plaintiffs, the Class, and/or the Subclass all of the rights and benefits under the CARES Act and its regulations;

C. Award damages, including compensatory, exemplary, punitive, and statutory damages, to Plaintiffs, the Class, and/or the Subclass in an amount to be determined at trial, for the acts complained of herein;

D. Award Plaintiffs, the Class, and/or the Subclass their expenses and costs of suit, including reasonable attorneys' fees to the extent provided by law;

E. Award Plaintiffs, the Class, and/or the Subclass pre-judgment and post-judgment interest at the highest legal rate to the extent provided by law; and

F. Grant all other and further relief to which Plaintiffs, the Class, and/or the Subclass are entitled by law or in equity as may be determined by the Court to be just, equitable, and proper.

Respectfully submitted,

*<u>/s/ Robert M. Cearley, Jr.</u>*
Robert M. Cearley, Jr. (Ark. Bar 69008)
Cearley Law Firm, P.A.
901 N. University Ave.
Little Rock, Arkansas 72207
Ph: (501) 372-5600
Email: bob@cearleylawfirm.com

James E. Arnold (Ohio Bar 0037712)
Damion M. Clifford (Ohio Bar 0077777)
Gerhardt A. Gosnell II (Ohio Bar 0064919)
Tiffany L. Carwile (Ohio Bar 0082522)
(Motions for Admission Pro Hac Vice Forthcoming)

ARNOLD & CLIFFORD LLP
115 W. Main St., 4th Floor
Columbus, Ohio 43215
Ph: (614) 460-1600
Email: jarnold@arnlaw.com
dclifford@arnlaw.com
ggosnell@arnlaw.com
tcarwile@arnlaw.com

*Counsel for Plaintiff*

**JURY DEMAND**

Plaintiffs hereby demand a trial by jury as to all issues so triable.

*/s/ Robert M. Cearley, Jr.*
Robert M. Cearley, Jr.

## PAYCHECK PROTECTION PROGRAM (PPP) INFORMATION SHEET

## LENDERS

**Who is eligible to lend?** All existing SBA-certified lenders will be given delegated authority to speedily process PPP loans.

All federally insured depository institutions, federally insured credit unions, and Farm Credit System institutions are eligible to participate in this program.

- New lenders that are federally insured depository institutions, federally insured credit unions, or Farm Credit System institutions will need to submit their application to DelegatedAuthority@sba.gov to apply.

Non-bank and non-insured depository institution lenders can also begin making loans as soon as they are approved and enrolled in the program.

- New lenders that are non-bank or non-insured depository institution lenders will need to submit their application to NFRLApplicationForPPP@sba.gov to apply.

**Are these loans guaranteed by the SBA?** Yes, the SBA guarantees 100% of the outstanding balance, and that guarantee is backed by the full faith and credit of the United States.

**Are there guarantee fees?** The SBA waives all SBA guaranty fees, including the upfront and annual servicing fees.

**What underwriting is required?** As explained in the PPP Interim Final Rule, you will need to confirm receipt of borrower certifications; confirm receipt of information demonstrating that a borrower had employees for whom the borrower paid salaries and payroll taxes on or around February 15, 2020; confirm the dollar amount of average monthly payroll costs; and follow applicable Bank Secrecy Act requirements. Lenders are permitted to rely on borrower certifications and representations as explained in the PPP Interim Final Rule and FAQ guidance.

**How will lenders be compensated?** Processing fees will be based on the balance of the financing outstanding at the time of final disbursement. SBA will pay lenders fees for processing PPP loans in the following amounts:

- Five (5) percent for loans of not more than $350,000;
- Three (3) percent for loans of more than $350,000 and less than $2,000,000; and
- One (1) percent for loans of at least $2,000,000.

Lenders may not collect any fees from the applicant.

**Who can be an agent?** An agent is an authorized representative and can be:

- An attorney;
- An accountant;
- A consultant;
- Someone who prepares an applicant's application for financial assistance and is employed and compensated by the applicant;
- Someone who assists a lender with originating, disbursing, servicing, liquidating, or

litigating SBA loans;
- A loan broker; or
- Any other individual or entity representing an applicant by conducting business with the SBA.

**How will agents be compensated?**  Agent fees will be paid out of lender fees. The lender will pay the agent.  Agents may not collect any fees from the applicant. The total amount that an agent may collect from the lender for assistance in preparing an application for a PPP loan (including referral to the lender) may not exceed:

- One (1) percent for loans of not more than $350,000;
- 0.50 percent for loans of more than $350,000 and less than $2 million; and
- 0.25 percent for loans of at least $2 million.

**Can these loans be sold in the secondary market?**  PPP loans can be sold in the secondary market.  The SBA will not collect any fee for any guarantee sold into the secondary market.

Please refer to the PPP Interim Final Rule and FAQ guidance for the most comprehensive and up-to-date guidance on this program.



SBA
U.S. Small Business
Administration

# Paycheck Protection Program (PPP) Report

Approvals through 07/10/2020

EXHIBIT
B
tabbies

# Summary of PPP Approved Lending

| Loan Count | Net Dollars | Lender Count |
|---|---|---|
| 4,907,655 | $517,417,286,175 | 5,454 |

| Lender Size | Lender Count | Loan Count | Net Dollars | % of Amount |
|---|---|---|---|---|
| >$50 B in Assets | 34 | 1,639,549 | $188,294,821,172 | 36% |
| $10 B to $50 B in Assets | 88 | 742,285 | $100,118,534,194 | 19% |
| <$10 B in Assets | 5,332 | 2,525,821 | $229,003,930,809 | 44% |

*SBA has updated its weekly PPP reporting methodology to improve consistency with the agency's financial reporting. Totals reflect both rounds of PPP funding and cancellations, decreases and partial cancellations through the report date. Cancellations include duplicative loans, loans not closed for any reason, and loans that have been fully paid off.*

*Approvals through 07/10/2020*

# PPP Round 2 Lender Segments

| Lender Size | Lender Count Round 2 | Loan Count Round 2 | Net Dollars Round 2 |
|---|---|---|---|
| >$50 B in Assets | 34 | 1,304,595 | $92,959,906,318 |
| $10 B to $50 B in Assets | 88 | 443,145 | $30,129,879,789 |
| <$10 B in Assets | 5,323 | 1,538,691 | $74,133,606,502 |

| Lender Group | Lender Count Round 2 | Loan Count Round 2 | Net Dollars Round 2 |
|---|---|---|---|
| CDFIs | 303 | 71,293 | $3,163,601,494 |

*CDFI lenders and associated loans are also captured in the <$10 billion or less lender asset size.*

*Approvals through 07/10/2020*

SBA

# Lender Segments

## CDFI's and MDI's

| Lender Type | Lender Count | Loan Count | Net Dollars |
|---|---|---|---|
| CDFIs | 303 | 106,269 | $7,342,856,435 |
| MDIs | 171 | 119,217 | $10,263,492,873 |
| *- minus CDFI/MDIs identified in both groups* | 50 | 15,567 | $1,483,885,270 |
| **Total** | **424** | **209,919** | **$16,122,464,038** |

## Lenders with <$1b Assets and Non-Banks

| Lender Type | Lender Count | Loan Count | Net Dollars |
|---|---|---|---|
| Banks (less than $1b) | 3,558 | 1,061,058 | $84,387,946,083 |
| Small Business Lending Companies | 14 | 59,316 | $6,281,523,800 |
| Fintechs (and other State Regulated) | 19 | 162,388 | $4,478,790,748 |
| Credit Unions (less than $1b) | 722 | 63,238 | $3,023,347,928 |
| Farm Credit Lenders | 54 | 15,198 | $1,331,480,207 |
| Savings & Loans (less than $1b) | 77 | 11,450 | $1,034,586,436 |
| Certified Development Companies | 19 | 7,566 | $380,783,395 |
| Non Bank CDFI Funds | 8 | 8,047 | $332,403,986 |
| Microlenders | 32 | 7,115 | $208,007,293 |
| BIDCOs | 1 | 24 | $791,088 |
| **Total** | **4,504** | **1,395,400** | **$101,459,660,966** |

* Loans from CDFI/MDI banks with <$1b Assets and non-bank CDFIs are captured in both tables.

*Approvals through 07/10/2020*

SBA

# States and Territories

| State | Loan Count | Net Dollars |
|---|---|---|
| AK | 11,201 | $1,268,152,120 |
| AL | 66,178 | $6,171,776,434 |
| AR | 42,524 | $3,306,785,127 |
| AS | 235 | $10,684,152 |
| AZ | 81,320 | $8,562,279,019 |
| CA | 584,057 | $67,434,221,209 |
| CO | 104,665 | $10,307,838,005 |
| CT | 61,246 | $6,649,978,553 |
| DC | 12,536 | $2,119,096,826 |
| DE | 12,539 | $1,493,085,658 |
| FL | 395,658 | $31,527,299,634 |
| GA | 158,328 | $14,332,157,048 |
| GU | 2,163 | $191,708,668 |
| HI | 24,566 | $2,462,532,625 |
| IA | 58,695 | $5,086,069,154 |
| ID | 30,233 | $2,576,539,776 |
| IL | 203,147 | $22,319,757,145 |
| IN | 79,373 | $9,444,978,210 |
| KS | 52,032 | $5,000,704,255 |
| KY | 48,516 | $5,232,005,575 |

| State | Loan Count | Net Dollars |
|---|---|---|
| LA | 74,250 | $7,341,780,863 |
| MA | 113,301 | $14,197,422,481 |
| MD | 81,753 | $9,929,429,909 |
| ME | 27,289 | $2,240,668,033 |
| MI | 121,538 | $15,834,698,177 |
| MN | 98,364 | $11,171,723,926 |
| MO | 91,797 | $9,114,411,429 |
| MP | 475 | $38,689,913 |
| MS | 45,990 | $3,155,763,306 |
| MT | 23,146 | $1,761,444,012 |
| NC | 122,562 | $12,125,177,812 |
| ND | 19,774 | $1,763,437,217 |
| NE | 42,663 | $3,421,955,547 |
| NH | 23,904 | $2,544,316,043 |
| NJ | 148,293 | $17,101,659,046 |
| NM | 21,970 | $2,236,426,746 |
| NV | 42,371 | $4,113,951,571 |
| NY | 325,688 | $38,074,956,614 |
| OH | 140,682 | $18,291,389,124 |
| OK | 64,460 | $5,431,749,320 |

| State | Loan Count | Net Dollars |
|---|---|---|
| OR | 62,980 | $6,947,651,477 |
| PA | 166,404 | $20,521,899,138 |
| PR | 37,925 | $1,798,649,151 |
| RI | 17,167 | $1,870,579,859 |
| SC | 63,448 | $5,698,244,845 |
| SD | 22,584 | $1,671,924,089 |
| TN | 93,750 | $8,869,473,952 |
| TX | 391,472 | $40,722,020,170 |
| UT | 50,815 | $5,221,711,829 |
| VA | 109,698 | $12,468,659,792 |
| VI | 1,890 | $124,243,481 |
| VT | 11,961 | $1,188,922,429 |
| WA | 101,515 | $12,269,322,605 |
| WI | 85,806 | $9,830,157,855 |
| WV | 17,365 | $1,778,746,913 |
| WY | 13,248 | $1,040,320,844 |
| To be confirmed | 145 | $6,057,463 |

*Approvals through 07/10/2020*

# Loan Size

| Loan Size | Loan Count | Net Dollars | % of Count | % of Amount |
|---|---|---|---|---|
| $50K and Under | 3,289,259 | $58,924,317,548 | 67.0% | 11.4% |
| >$50K - $100K | 673,105 | $47,925,204,459 | 13.7% | 9.3% |
| >$100K - $150K | 290,329 | $35,534,531,720 | 5.9% | 6.9% |
| >$150K - $350K | 374,674 | $84,089,961,753 | 7.6% | 16.3% |
| >$350K - $1M | 198,518 | $112,914,656,802 | 4.0% | 21.8% |
| >$1M - $2M | 52,931 | $73,475,210,072 | 1.1% | 14.2% |
| >$2M - $5M | 24,164 | $71,909,398,898 | 0.5% | 13.9% |
| >$5M | 4,675 | $32,644,004,921 | 0.1% | 6.3% |

*** Overall average loan size is: $105K.**

*Approvals through 07/10/2020*

# Top PPP Lenders

| Rank | Lender Name | Loan Count | Net Dollars | Average Loan Size | % of Total Authority |
|---|---|---|---|---|---|
| 1 | JPMorgan Chase Bank | 269,334 | $28,895,195,602 | $107,284 | 4.4% |
| 2 | Bank of America | 334,210 | $25,235,794,526 | $75,509 | 3.8% |
| 3 | PNC Bank | 72,861 | $12,955,859,763 | $177,816 | 2.0% |
| 4 | Truist Bank | 79,219 | $12,564,160,606 | $158,600 | 1.9% |
| 5 | Wells Fargo Bank | 185,238 | $10,368,597,572 | $55,974 | 1.6% |
| 6 | TD Bank | 83,068 | $8,450,839,097 | $101,734 | 1.3% |
| 7 | KeyBank | 41,501 | $8,136,520,088 | $196,056 | 1.2% |
| 8 | U.S. Bank | 101,326 | $7,423,395,923 | $73,262 | 1.1% |
| 9 | Zions Bank | 46,668 | $6,932,780,587 | $148,555 | 1.1% |
| 10 | M&T Bank | 34,679 | $6,775,786,114 | $195,386 | 1.0% |
| 11 | Huntington Bank | 37,116 | $6,505,730,515 | $175,281 | 1.0% |
| 12 | Cross River Bank | 145,727 | $5,551,827,610 | $38,097 | 0.8% |
| 13 | Fifth Third Bank | 38,156 | $5,363,051,466 | $140,556 | 0.8% |
| 14 | Citizens Bank | 49,641 | $4,828,700,097 | $97,272 | 0.7% |
| 15 | BMO Harris Bank | 21,398 | $4,804,777,294 | $224,543 | 0.7% |

*Approvals through 07/10/2020*

SBA

# Industry by NAICS Sector

| NAICS Sector Description | Loan Count | Net Dollars | % of Amount |
|---|---|---|---|
| Health Care and Social Assistance | 508,145 | $66,781,156,115 | 12.91% |
| Professional, Scientific, and Technical Services | 641,118 | $65,943,363,570 | 12.74% |
| Construction | 468,156 | $64,113,731,038 | 12.39% |
| Manufacturing | 230,003 | $53,696,102,072 | 10.38% |
| Accommodation and Food Services | 368,311 | $41,874,859,061 | 8.09% |
| Retail Trade | 451,441 | $40,080,460,085 | 7.75% |
| Other Services (except Public Administration) | 535,476 | $30,876,639,581 | 5.97% |
| Wholesale Trade | 167,698 | $27,506,682,339 | 5.32% |
| Administrative and Support and Waste Management and Remediation Services | 241,866 | $26,205,302,079 | 5.06% |
| Transportation and Warehousing | 194,794 | $16,913,955,937 | 3.27% |
| Real Estate and Rental and Leasing | 247,091 | $15,420,146,121 | 2.98% |
| Finance and Insurance | 169,475 | $12,000,306,409 | 2.32% |
| Educational Services | 81,800 | $11,894,209,521 | 2.30% |
| Unclassified Establishments | 221,914 | $9,833,348,981 | 1.90% |
| Information | 69,358 | $9,205,660,921 | 1.78% |
| Arts, Entertainment, and Recreation | 119,310 | $7,971,161,316 | 1.54% |
| Agriculture, Forestry, Fishing and Hunting | 139,729 | $7,876,179,303 | 1.52% |
| Mining | 21,616 | $4,469,100,815 | 0.86% |
| Public Administration | 13,459 | $1,728,736,616 | 0.33% |
| Management of Companies and Enterprises | 8,937 | $1,551,745,946 | 0.30% |
| Utilities | 7,958 | $1,474,438,348 | 0.28% |

*Approvals through 07/10/2020*

# Amount of Funding Remaining

## $132,189,028,196

*Available funds captures approvals net of cancellations as well as loan increases, decreases, and reinstatements. This amount accounts for statutory program costs. This amount also includes $10 billion PPP CDFI set aside.*

*Approvals through 07/10/2020*

SBA